**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Hong Jie Song, Bai Sun, and Jing Guo, Individually and on
Behalf of All Other Employees Similarly Situated,

Plaintiffs,

- against -

TH NYC Restaurant 1 LLC d/b/a Pinch Chinese, Xiang
Tang a/k/a Sean Tang, Tao Li a/k/a "Tony" Li, Chang Gui
Chen, and Ming Liang Chen,

Defendants.

Case No.

**COMPLAINT**

Plaintiffs Hong Jie Song, Bai Sun, and Jing Guo (collectively " Plaintiffs") on their own

behalf and on behalf of all others similarly situated, by and through their undersigned attorneys,

Hang & Associates, PLLC, hereby file this complaint against the Defendants TH NYC Restaurant

1 LLC d/b/a Pinch Chinese ("Corporate Defendants"), Xiang Tang a/k/a Sean Tang, Tao Li a/k/a

"Tony" Li, Chang Gui Chen, and Ming Liang Chen, (collectively "Defendants"), allege and show

the Court the following:

**INTRODUCTION**

1.      This is an action brought by Plaintiffs on their own behalf and on behalf of

similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §

201 et seq. ("FLSA"), the New York Labor Law ("NYLL"), the Trafficking Victims Protection

Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA"),  arising from Defendants' various willful

and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA, and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, compensation for all hours worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Upon information and belief, Defendants have willfully and intentionally committed violation of the TVPRA by engaging in a pattern and practice of unlawfully confiscating and holding Plaintiffs' passports and O-2 work visas, failure to pay Plaintiffs salaries and assign Plaintiffs to positions according to the employment contract provided for their work visa application.

4.      Upon information and belief, Defendants further breached the employment contract between parties by improperly terminating Plaintiffs' employment prior to the expiration of the contract term.

5.      Upon information and belief, Defendants also constituted fraud, breach of the implied covenant of good faith and fair dealing, and conversion under New York common law.

6.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

7.      Plaintiffs further alleges pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wages (2) unpaid overtime compensation, (3) unpaid "spread of hours" premium for each day they worked ten (10) or more hours, (4) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation

of the NYLL (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, and unpaid overtime pursuant to the NY Wage Theft Prevention Act; (6) prejudgment and post-judgment interest; and (7) attorney's fees and costs.

## JURISDICTION AND VENUE

8.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

10.      Plaintiff Hong Jie Song (hereinafter "Mr. Song" or "Plaintiff Song") is an individual residing in Flushing, New York.

11.      From on or around June 27, 2019 to on or around November 1, 2019, Plaintiff Song was employed by Defendants at their restaurant, TH NYC Restaurant 1 LLC d/b/a Pinch Chinese, located at 177 Prince Street, Storefront, New York, NY 10012 as a cook.

12.      From on or around June 27, 2019 to on or around July 27, 2019, Plaintiff Song was employed by Defendants as a noodle cook.

13.      From on or around July 27, 2019 to on or around November 1, 2019, Plaintiff Song was employed by Defendants as a dim sum cook.

14.      Plaintiff Bai Sun (hereinafter "Mr. Sun" or "Plaintiff Sun") is an individual residing in Queens, New York.

15.     Plaintiff Sun was employed by Defendants' restaurant, TH NYC Restaurant 1 LLC d/b/a Pinch Chinese, located at 177 Prince Street, Storefront, New York, NY 10012 as a dim sum chef and then fry wok chef from on or around May 6, 2019 to November 11, 2019.

16.     Plaintiff Sun started as a fry wok chef for the first month during his employment.

17.     Plaintiff Jing Guo (hereinafter "Mr. Guo" or "Plaintiff Guo") is an individual currently residing in Flushing, New York.

18.     Plaintiff Guo was employed by Defendants' restaurant, TH NYC Restaurant 1 LLC d/b/a Pinch Chinese, located at 177 Prince Street, Storefront, New York, NY 10012 as a dim sum chef from on or around February 25, 2019 to June 30, 2020.

19.     Plaintiffs are migrant chef and citizens of China. At all relevant times during the employment, they were lawfully admitted to the United States on an O-2 temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(O)(ii) and 8 CFR 214.2 (o).

## DEFENDANTS

20.     Upon information and belief, Defendants own and operate a restaurant business, TH NYC Restaurant 1 LLC d/b/a Pinch Chinese (hereinafter "Pinch" or "the restaurant"), located at 177 Prince Street, Storefront, New York, NY 10012.

21.     The restaurant, Pinch, has about twenty (20) employees during the normal time.

22.     During the Covid-19 period, the restaurant has about five (5) employees.

### *Corporate Defendants*

23.     Upon information and belief, Defendant Pinch is a domestic business corporation organized under the laws of the State of New York with a principal business address at 177 Prince Street, Storefront, New York, NY 10012.

24.     Upon information and belief, Defendant, Pinch had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

25.     Upon information and belief, Defendant Pinch purchased and handled goods moved in interstate commerce, including beverages, flours, and other food ingredients.

### *Individual Defendants*

26.     The Individual Defendants are officers, directors, managers, and/or majority shareholders or owners of the Corporate Defendants and being amongst the ten largest corporate shareholders are individually responsible for unpaid wages under the New York Business Corporation Law Section 630.

27.     Defendant Xiang Tang a/k/a Sean Tang (hereinafter "Defendant Tang" or "Mr. Tang") was known as "boss" to Plaintiffs, as he (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at Pinch.

28.     Upon information and belief, Defendant Tang is the founder of Pinch.

29.     Upon information and belief, Defendant Tang is actively involved in the management of Defendants' business enterprise, including giving work assignments to individual plaintiffs, and managing the inventory and supplies.

30.     Upon information and belief, Defendant Tang owns the stock of Pinch and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

31.     Upon information and belief, Defendant Tang provided the employment contract between the parties and applied for Plaintiffs' O-2 temporary work visas. In the employment contract which defines Plaintiffs as the O-2 work visa beneficiary, Defendant Tang determined Plaintiffs' wages, the time period of employment, and the position.

32.     Upon information and belief, Defendant Tao Li a/k/a "Tony" Li (hereinafter "Mr. Li" or "Defendant Li") is the officer, director and/or managing agent of Pinch at 177 Prince Street, Storefront, New York, NY 10012 and participated in the day-to-day operations of Pinch and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203(d), and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Pinch.

33.     Upon information and belief, Defendant Li is known as "Little Boss" to plaintiffs, as he (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at Pinch.

34.     Upon information and belief, Defendant Li is actively involved in the management of Defendants' business enterprise, including giving work assignments to individual plaintiffs, and managing the inventory and supplies. For instance, Defendant Li arranged Plaintiffs' trip to the United States and handled Plaintiffs' payrolls.

35.     Upon information and belief, Defendant Li manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

36.     Upon information and belief, Defendant Chang Gui Chen (hereinafter "Mr. Chen" or "Defendant Chen") is the managing agent of Pinch at 177 Prince Street, Storefront, New York,

NY 10012 and participated in the day-to-day operations of Pinch and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203(d), and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Pinch.

37.     Upon information and belief, Defendant Chen is the is actively involved in the management of Defendants' kitchen employees, including giving work assignments to individual plaintiffs, and managing the inventory and supplies.

38.     Upon information and belief, Defendant Ming Liang Chen (hereinafter "Ming Liang" or "Defendant Ming Liang") is the managing agent of Pinch at 177 Prince Street, Storefront, New York, NY 10012 and participated in the day-to-day operations of Pinch and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203(d), and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Pinch.

39.     Upon information and belief, Defendant Ming Liang is the is actively involved in the management of Defendants' kitchen employees, including giving work assignments to individual plaintiffs, and managing the inventory and supplies.

40.     At all times relevant herein, Pinch was, and continues to be, "enterprise engaged in commerce" within the meaning of FLSA.

41.     At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Pinch.

42.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs minimum wages for all hours worked, their lawfully earned overtime compensation and spread-

of-hour premiums, and failed to provide them wage statements and a wage notice at the time of hiring in violation of the NYLL.

43.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## STATEMENT OF FACTS

44.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

45.     Defendants knew that the failure to Plaintiffs minimum wages, nonpayment of overtime pay, spread of hours pay, and failure to provide the required wage notice at the time of hiring would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

### *Plaintiff Hong Jie Song*

46.     From on or around June 27, 2019 to on or around November 1, 2019, Plaintiff Song was hired by Defendants to work first as a noodle chef and then as dim sum cook for Defendants' restaurant business, Pinch, located at 177 Prince Street, Storefront, New York, NY 10012.

47.     During all relevant times, Plaintiff Song worked six days per week. Plaintiff Song would take one day off between Monday and Thursday according to Defendants' arrangement. His primary duty was making noodles for the first month and then includes making dim sums. His daily work schedule was the same for Monday through Thursday and is as follows: on each workday Plaintiff Song would arrive at the restaurant between 11:20 a.m. to 11:30 a.m. and leave the restaurant at about 10:15 p.m. From Friday to Sunday, Plaintiff Song would arrive at the restaurant between 10:50 a.m. and 11:00 a.m. and leave the restaurant at about 10:15 p.m. Plaintiff Song would take a break from 3:00 p.m. to 5:00 p.m. Plaintiff Song thus worked more than ten

(10) hours each working day; and therefore, worked at least sixty-six and a half (66.5) hours per week.

48.    During all relevant times, Plaintiff Song was compensated via direct deposit at a fixed weekly rate of between $480 and $490, regardless of his hours worked and he was not paid for all hours worked.

49.    Plaintiff Song would get a $5 bonus when Pinch's daily revenue exceed $10,000 on Saturday or Sunday.

50.    Defendant Li hired Plaintiff Song.

51.    Upon information and belief, Defendant Li, Defendant Ming Liang, and Defendant Chen supervised Plaintiff Song.

52.    Defendant Tang dominated the business operations in Pinch.

53.    Upon information and belief, Defendant Ming Liang and Defendant Chen determined the assignment of Plaintiff Song's duties and the conditions of his employment.

54.    Defendant Li handled the payrolls for Pinch and remitted wage payments to Defendants' employees, including Plaintiff Song.

55.    Plaintiff Song was not provided a correct written wage notice, in English and in Chinese (the primary language identified by Plaintiff Song) when he was hired, including but not limited to information about her rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

56.    Plaintiff Song was not required to record his work hours such as punch time cards and was not paid for all hours worked per week.

57.    Defendants did not provide Plaintiff Song with a proper pay stub with each wage payment.

***Plaintiff Bai Sun***

58.    From on or around May 6, 2019 to on or around November 11, 2019, Plaintiff Sun was hired by Defendants to work first as a fry wok and then as a dim sum chef for Defendants' restaurant, Pinch, located at 177 Prince Street, Storefront, New York, NY 10012.

59.    Plaintiff Sun was first trained to do general kitchen preparation, and was them assigned to make Xiaolongbao and other dim sum.

60.    During this period, Plaintiff Sun worked six days per week. Plaintiff Sun would take one day off between Monday and Thursday according to Defendants' arrangement. His primary duty was making noodles for the first month and then includes making dim sums. His daily work schedule was the same for Monday through Thursday and is as follows: on each workday Plaintiff Sun would arrive at the restaurant between 11:20 a.m. to 11:30 a.m. and leave the restaurant at about 10:15 p.m. From Friday to Sunday, Plaintiff Sun would arrive at the restaurant between 10:50 a.m. and 11:00 a.m. and leave the restaurant at about 10:15 p.m. Plaintiff Sun would take a break from 3:00 p.m. to 5:00 p.m. Plaintiff Sun thus worked more than ten (10) hours each working day; and therefore, worked at least sixty-six and a half (66.5) hours per week.

61.    During this period, Plaintiff Sun was compensated via direct deposit at a fixed weekly rate of about $500, regardless of his hours worked and he was not paid for all hours worked.

62.    Plaintiff Song would get a $5 bonus when Pinch's daily revenue exceed $10,000 on Saturday or Sunday.

63.    Defendant Li hired Plaintiff Sun.

64.    Upon information and belief, Defendant Li, Defendant Ming Liang, and Defendant Chen supervised Plaintiff Song.

65.    Upon information and belief, Defendant Ming Liang and Defendant Chen determined the assignment of Plaintiff Song's duties and the conditions of his employment.

66.    Defendant Li handled the payrolls for Pinch and remitted wage payments to Defendants' employees, including Plaintiff Sun.

67.    Plaintiff Sun was not provided a correct written wage notice when he was hired, including but not limited to information about her rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

68.    Plaintiff Sun was not required to record his work hours such as punch time cards and was not paid for all hours worked per week.

69.    Defendants did not provide Plaintiff Sun with a proper pay stub with each wage payment.

### *Plaintiff Jing Guo*

70.    From February 25, 2019 to September 3, 2020, Plaintiff Guo was hired by Defendants to work as dim sum chef for Defendants' restaurant, Pinch, located at 177 Prince Street, Storefront, New York, NY 10012.

71.    During this time period, Plaintiff Guo worked six days per week with one day off according to Defendants' arrangement. His primary duty includes making XiaoLongBao and other dim sum dumplings.

72.    From February 25, 2019 to June 30, 2020, Plaintiff Guo's daily work schedule was the same from Monday to Thursday and is as follows: on each workday Plaintiff Guo would arrive at the restaurant at about 11:30 a.m., and started working uninterruptedly. Plaintiff Guo would leave the restaurant at about 9:30 p.m. From Friday to Sunday, Plaintiff Guo would arrive at the

restaurant at about 11:00 a.m., and started working uninterruptedly. On Friday and Sunday, Plaintiff Guo would leave the restaurant at about 10:30 p.m. On Saturday, Plaintiff Guo would leave the restaurant at about 11:30 p.m. He was allowed to have food in the kitchen but must be on call the whole time. Plaintiff Guo thus worked more than ten (10) hours on every working day; and therefore, worked about sixty-four (64) to sixty-five and a half (65.5) hours per week.

73.    From February 25, 2019 to June 30, 2020, Plaintiff Guo was compensated via direct deposit at a fixed weekly rate of about $500, regardless of his hours worked and he was not paid for all hours worked.

74.    From July 1, 2020 to September 3, 2020, due to the pandemic, Plaintiff Guo worked seven (7) days per week. Her daily work schedule was the same for all his workdays and is as follows: on each workday Plaintiff Guo would work from 2:30 p.m. to 9:15 p.m. without a break. He was allowed to have food in the kitchen but must be on call the whole time. Plaintiff Guo thus worked about seven (7) hours each day; and therefore, worked about forty-nine (49) hours per week.

75.    Due to the pandemic, Defendants hired less employees (about five employees) compared to normal times. Therefore, Plaintiff Guo was required to do other side jobs including help packaging deliveries.

76.    From July 1, 2020 to September 3, 2020, Plaintiff Guo was compensated via direct deposit at a fixed weekly rate of about $447, regardless of his hours worked and he was not paid for all hours worked

77.    Defendant Li hired Plaintiff Guo.

78.    Upon information and belief, Defendant Li, Defendant Ming Liang, and Defendant Chen supervised Plaintiff Guo.

79.    Upon information and belief, Defendant Ming Liang and Defendant Chen determined the assignment of Plaintiff Guo's duties and the conditions of his employment.

80.    Defendant Li handled the payrolls for Pinch and remitted wage payments to Defendants' employees, including Plaintiff Guo.

81.    Plaintiff Guo was not provided a correct written wage notice, in English and in Chinese (the primary language identified by Plaintiff Guo) when he was hired, including but not limited to information about her rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

82.    Plaintiff Guo was not required to record her work hours such as punch time cards and was not paid for all hours worked per week.

83.    Defendants did not provide Plaintiff Guo with a proper pay stub with each wage payment.

### *Plaintiffs' O-2 Visa*

84.    Defendant Tang provided Plaintiffs with employment contracts which appoints Plaintiffs as O-2 work visa beneficiaries.

85.    In the employment contract, Defendants hired Plaintiffs as dim sum chef for a fixed time period until 2022, on a fixed salary of $40,000 per year.

86.    Defendant Tang confiscated Plaintiffs' passports from the beginning of their employment.

87.    Defendants had been paying Plaintiffs less than the salary determined in the employment contract.

88.    Plaintiff Sun was first assigned to work as a fry wok chef and a kitchen help instead of a dim sum chef for the first month.

89.    Plaintiff Song was first assigned to work as a chef to cook noodles instead of a dim sum chef for the first month.

90.    Plaintiff Song and Plaintiff Sun requested their W-2 tax forms from Defendants, and Defendants refused to issue the W-2 forms before Plaintiff Song and Plaintiff Sun pay Defendants back for their visa application fees and all their other travel fees to the United States.

91.    Plaintiff Song and Plaintiff Sun made complaints to Defendants because they were paid much less than the contract terms. However, Defendants never matched their salaries to the terms in the employment contract. Plaintiff Song and Plaintiff Sun then left the restaurant, Pinch.

92.    On or around August 24, 2020, Plaintiff Guo had an argument with Defendant Li. Plaintiff Guo was supposed to place two dishes together when he was packaging the deliveries. However, he packaged the two dishes separately. Defendant Li criticized Plaintiff Guo for packaging the two dishes separately, and Plaintiff Guo did not think he should be criticized like that.

93.    Therefore, Plaintiff Guo requested to take a vacation for about five (5) days from August 25, 2020 to August 30, 2020. Plaintiff Guo went back for work on August 31, 2020.

94.    On September 3, 2020, Plaintiff Guo asked for a vacation again because he felt the tension between him and Defendant Li. Defendant Li threatened Plaintiff Guo that Plaintiff Guo would be fired and Defendants would report to the immigration office, the U.S. Citizenship and Immigration Services (USCIS) about Plaintiff Guo's quit so that he would be deported.

95.    Defendants did not pay Plaintiff Guo for the hours he worked from August 31, 2020 to September 3, 2020.

96.    Plaintiff Guo never used his paid-time-off he earned after one-year work at Pinch before August 25, 2020.

14

## COLLECTIVE ACTION ALLEGATIONS

97.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

98.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and other similarly situated employees.

99.    Plaintiffs bring this action individually and on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants at their restaurant location for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive overtime compensation for all hours worked in excess of forty (40) hours per week, and when applicable, spread-of-hours pay for every work day that lasts longer than 10 hours  (the "Collective Action Members"), and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

100.    Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than forty (40) Collective Action members, who have worked for or have continued to work for

the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

101.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

102.    This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

103.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

104.    Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

c. Whether the Defendants failed to pay the Collective Action Members spread of hours payment for each day an employee worked over 10 hours;

d. Whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

e. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

f. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

105.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

106.    Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## **CLASS ACTION ALLEGATIONS**

107.    Plaintiffs bring their NYLL claims, TVPRA claims, breach of contract claims, and fraud claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at their three restaurant doing business as Pinch on

or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

108.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P 23.

109.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

110.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporation wide policies and practices, including but not limited to their failure to provide a wage notice at the time of hiring, affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

111.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has

no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced

and competent in representing Plaintiffs in both class action and wage and hour employment

litigation cases.

112.    A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of wage and hour litigation where

individual Class members lack the financial resources to vigorously prosecute corporate

defendants. Class action treatment will permit a large number of similarly situated persons

to prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expenses that numerous individual actions engender. The

losses, injuries, and damages suffered by each of the individual Class members are small in the

sense pertinent to a class action analysis, thus the expenses and burden of individual litigation

would make it extremely difficult or impossible for the individual Class members to redress the

wrongs done to them.  Further, important public interests will be served by addressing the matter

as a class action.  The adjudication of individual litigation claims would result in a great

expenditure of Court and public resources; however, treating the claims as a class action

would result in a significant saving of these costs.  The prosecution of separate actions by

individual members of the Class would create a risk of inconsistent and/or varying adjudications

with respect to the individual members of the Class, establishing incompatible standards of

conduct for Defendants and resulting in the impairment of class members' rights and the

disposition of their interests through actions to which they were not parties. The issues in this

action can be decided by means of common, class-wide proof.  In addition, if appropriate, the

Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

113.    Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.   Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

114.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b. Whether Plaintiffs and Class members are entitled to overtime under the New York Labor Law;

c. Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

d. Whether the Defendants provided wage notices at the time of hiring to Plaintiffs and class members as required by the NYLL;

e. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work;

f. Whether Plaintiffs and Class members are entitled to compensation under the New York Common Law.

## STATEMENT OF CLAIM

### COUNT I
**[Violations of the Fair Labor Standards Act—Overtime Wage
Brought on behalf of the Plaintiffs and the FLSA Collective]**

115.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

116.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

117.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

118.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

119.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

120.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

121.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

122.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT II**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiffs and the Rule 23 Class]**

123.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.    For the overtime wage claim, 12 N.Y. C.R.R. § 142-2.2 provides that, An employer shall pay an employee for overtime in excess of forty hours per week at a wage rate of one and one-half times the employee's regular rate, or minimum wage, whichever is greater.

125.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

126.    Defendants' failure to pay Plaintiffs and the Rule 23 Class their overtime pay violated the NYLL.

127.    Defendants' failure to pay Plaintiffs and the Rule 23 Class was not in good faith.

**COUNT III**

22

**[Violation of New York Labor Law—Minimum Wage
Brought on behalf of Plaintiffs and the Rule 23 Class]**

128.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

129.     12 N.Y. C.R.R. § 142-2.1 provides minimum wage requirements for New York employers in the past few years. In 2020, the minimum wage for all employees in New York city is $15. In 2019, the NY minimum wage for large employers was $15.

130.     Plaintiff Song was paid at a rate from about $7.22 (=$480/66.5) to $7.37 (=$490/66.5) per hour during his employment with Defendants.

131.     Plaintiff Sun was paid at a rate of about $7.52 per hour.

132.     Plaintiff Guo was paid at a rate from about $7.63 (=$500/65.5) to about $9.12 (=$447/49) per hour.

133.     Therefore, the hourly wage calculated from Plaintiff's complaint was below the minimum wage. In order to successfully move for summary judgment, Defendants must provide facts that, Plaintiff was paid at an hourly rate at or above the minimum wage requirement.

134.     The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

135.     Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

136.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they

knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT IV**
**[Violation of New York Labor Law—Spread of Time Pay**
**Brought on behalf of Plaintiffs and the Rule 23 Class]**

137.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

138.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, et seq., and §§650, et seq., and New York State Department of Labor regulations §146-1.6.

139.    NYCRR §§ 142 provides that hourly, nonexempt employees whose workday begins and ends more than 10 hours apart are owed an extra hour of pay, known as a Spread of Hour rate.

140.    According to split shift guidelines, an employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage for any day in which the "spread of hours" exceeds 10 hours or there is a "split shift", which  includes all time working, time off for meals, and any off-duty time during or between shifts.

141.    Here, Plaintiff Song and Plaintiff Sun worked more than ten (10) hours every working day; Plaintiff Guo worked more than ten (10) hours per every working day from on or around February 25, 2019 to June 30, 2020.

142.    Defendants' failure to pay Plaintiffs and Rule 23 Class spread-of-hours pay was not in good faith.

143.    Therefore, Plaintiffs are entitled to an extra hour of pay for the days they worked more than ten (10) hours per day.

## COUNT V
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement]

144.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

145.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

146.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide correct written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

147.    Defendants not only did not provide correct notice to each employee at Time of Hire, but failed to provide the correct notice to each Plaintiffs even after the fact. The employment contract between parties does not match Plaintiffs' actual wages.

148.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York

Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VI
### [Violation of New York Labor Law—New York Pay Stub Requirement]

149.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

150.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

151.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

152.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT VII
### [Violation of TVPRA—Human Trafficking
### Brought on behalf of Plaintiffs and the Rule 23 Class]

153.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

154.    This Count sets forth a claim by the Plaintiffs against Defendants for violations of the forced labor provision of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA"). The Plaintiffs are authorized to bring this civil claim against Defendants pursuant to the civil remedies and extraterritorial provisions of the TVPRA. 18 U.S.C. § 1595, 1596.

155.    The TVPRA, 18 U.S.C. § 1589, prohibits "forced labor," defined as labor obtained through (I) force or the threat of force, physical restraint or threats of physical restraint; (2) serious harm or threat of serious harm; (3) abuse or threatened abuse of law or the legal process; or (4) any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

156.    Under 8 CFR 214.2 (o), "An O-2 classification applies to an accompanying alien who is coming temporarily to the United States solely to assist in the artistic or athletic performance by an O-1. The O-2 alien must: (1) Be an integral part of the actual performances or events and posses critical skills and experience with the O-1 alien that are not of a general nature and which are not possessed by others; or (2)…"

157.    Here, Plaintiffs were recruited and transported to the United States as dim sum chef. They were forced to do other side work including cooking noodles, kitchen helper, or packaging deliveries with much less compensations than promised in the employment contract. Defendants forced Plaintiffs to continue to work for Defendants when they were substantially under paid by creating a threat of serious harm and a threat of abuse of law or the legal process, i.e., confiscating and maintaining possession of Plaintiffs' passports and visas to keep them from switching their job or reporting his labor abuses to the governmental agencies.

158.    Plaintiffs requested he return of their passports and immigration documents at various times. Defendants eventually returned Plaintiff Song and Plaintiff Sun's passports after they left the restaurant but ripped off the O-2 visa page and their entry records before returning them back.

159.    For Plaintiff Guo, he was not only under paid, but also was required to help package

deliveries. And when Plaintiff Guo requested for a vacation because an argument happened between him and Defendant Li, he was threatened that if he take a vacation, Defendants would end the employment relationship and report to the USCIS so that he would be in danger of being deported.

160.    Defendants thus violated the TVPRA, 18 U.S.C. §§ 1589, by confiscating the Plaintiffs' passports, destroying Plaintiffs' visas, and creating threat of serious harm; specifically, the threat of arrest, loss of earned wages, and deportation if they left Pinch.

161.    Therefore, Defendants recruited and transported the Plaintiffs into the United States for the purposes of obtaining their labor through abuse or threatened abuse of law or the legal process.

162.    Without their visas and passports, Plaintiffs believed they would be unable to prove their legal status and defend themselves, should relations with Defendants deteriorate or should Defendants engage in an abuse of legal process, should as wrongfully reporting them to immigration or the local police as being undocumented, illegal aliens. By confiscating the Plaintiffs' passports and destroying their visas, Defendants created a threat of an abuse of legal process by making possible their arrest, prosecution as illegal aliens, and deportation if they left Pinch. The threat of abuse of legal process was further solidified when Defendants refused to return Plaintiffs' passports upon request for several times and then eventually ripped off the visa and entry record pages. Defendants' abusive and illegal business practices, including confiscating the Plaintiffs' and other employees' passports and visas, created an intimidating and coercive work environment in which the workers were unable to challenge Defendants breaches of the terms of their employment contract. These business practices constitute a scheme, plan, or pattern intended to cause the workers to believe that, if the workers did not perform required labor or services, they

would suffer serious harm, in violation of 18 U.S.C. §§, 1589, 1590, 1592.

163.    Defendants' actions detailed in this Count were taken knowingly within the meaning of 18 U.S.C. §§ 1589, 1590, 1592.

164.    Plaintiffs suffered injuries as a result of these actions. For instance, lost wages, lost job opportunities, unpaid minimum wages and overtime wages, etc.

165.    Based on Defendants' unlawful actions violating TVPRA, Plaintiffs are entitled to an award of compensatory and punitive damages to be determined, damages as a result of pain and suffering, attorneys' fees, and costs, including pre- and post-judgment interest pursuant to 18 U.S.C. § 1595.

## COUNT VIII
### [Violation of New York Common Law—Breach of Contract
### Brought on behalf of Plaintiffs and the Rule 23 Class]

166.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

167.    Defendants made an offer of employment that the Plaintiffs accepted and which was made for mutual consideration and with specific and certain terms.

168.    The employment agreement incorporated and included the statements and assurances contained in the requirements of the O-2 work visa program.

169.    The Hernandez Perez brothers fully performed their obligations under the employment contract.

170.    Defendants Huerta Farms and Mario Huerta committed multiple breaches of the terms of employment contract with the Hernandez Perez brothers, including but not limited to the following:

a. Reducing their hourly wage from the adverse effect wage rate of $40,000 per year to only about $500 per week, which is equivalent to $26,000 per year;

b. Confiscating their passports and visas and thereby severely restricting their freedom of movement;

c. Requiring Plaintiffs to do side jobs for Defendants constantly;

d. Failure to keep accurate and adequate records with respect to the workers' earnings;

e. Failure to provide the workers with accurate hours and earnings statements;

f. Failure to provide them with the agreed-upon number of hours of work per week;

g. Terminating the employment contract without good cause and not based on serious acts of misconduct.

171.    Defendants paid Plaintiffs significantly less than the annual wage promised in the employment contract (about $26,000 per year instead of $40,000 per year) for the work that Plaintiffs performed for Defendants. Also, Plaintiffs' weekly rate was calculated hourly instead of an annual salary, contrary to their employment contract for the work that Plaintiffs performed for Defendants.

172.    Defendants terminated Plaintiffs' employment without good cause before the expiration of the employment contract terms.

173.    Defendants knew or should have known of the other breaches of the employment contract committed by Defendants as set forth above and herein.

174.    Plaintiffs incurred damages as a result of Defendants' breach of their employment contract, including but not limited to the following:

        h.   Lost wages due to reduction in hourly pay;

        i.   Lost wages due to unlawful deducted wages;

        j.   Lost wages due to early termination of employment;

        k.   Transportation costs;

        l.   Lodging expenses;

        m.  Cost of obtaining new passport and visas;

        n.   Lost wages due to lost job opportunities without holding legal immigration documents.

175.    Due to Defendants' breach of contract, Plaintiffs are entitled to an award of compensatory and punitive damages to be determined, attorneys' fees, and costs.

**COUNT IX**
**[Violation of New York Common Law—Fraud**
**Brought on behalf of Plaintiffs and the Rule 23 Class]**

176.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

177.    Defendants made numerous material misrepresentations in the offer of employment to the Plaintiffs as stated in the employment agreement executed during the O-2 work visa application process, including without limitation, the amount of hourly wage that Plaintiffs would be paid, and the employment period.

178.    Defendants made these misrepresentations with knowledge of their falsity.

179.    Defendants made these representations with an intention that Plaintiffs' would rely on them and accept the employment offer.

180.    Plaintiffs reasonably relied on the representations stated in the employment agreement.

181.    Defendants' actions constitute fraud.

182.    Plaintiffs incurred damages as a result of Defendants' misrepresentations, including deprivation of wages owed to them, compensation for their related expenses, and lost job opportunities due to the early unlawful termination.

183.    Due to Defendants' material misrepresentations, Plaintiffs are entitled to an award of compensatory and punitive damages to be determined, damages as a result of pain and suffering, attorneys' fees, and costs.

**COUNT X**
**[Violation of New York Common Law—Breach of Implied Covenant of Good Faith and**
**Fair Dealing**
**Brought on behalf of Plaintiffs and the Rule 23 Class]**

184.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

185.    Defendants, by confiscating Plaintiffs' passports and destroying the visas and thereby preventing them from having freedom to leave Pinch, creating a coercive and intimidating atmosphere, taking advantage of their vulnerability and the parties' unequal bargaining positions, and violating the terms of their employment agreement, acted in bad faith with the purpose of depriving Plaintiffs of their rights and benefits under their employment contracts.

186.    These actions by Defendants were in breach of the implied covenant of good faith and fair dealing.

187.    Defendants' conduct caused Plaintiffs to suffer injury, damage, loss, and/or harm, including but not limited to unreimbursed costs, unjustified fees and charges, lost wages, and lost

employment opportunities.

188.    Due to Defendants' breach of implied covenant of good faith and fair dealing, Plaintiffs are entitled to an award of compensatory and punitive damages to be determined, damages as a result of pain and suffering, attorneys' fees, and costs.

## **Prayer For Relief**

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA collective members and rule 23 class, respectfully request that this court enter a judgment providing the following relief:

a)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as non-exempt tipped or non-tipped employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly proper compensation and premium overtime wages, suffered damages from Defendants' violation of TVPRA, breach of contract, or fraud;

b)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)    Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class counsel;

d)    Certification of this case as a collective action pursuant to FLSA;

e)     Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual

Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

f)      A declaratory judgment that the practices complained of herein are unlawful under FLSA, NYLL, TVPRA and New York Common Law;

g)      An injunction against Pinch, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)      An award of unpaid wages and overtime wages due Plaintiffs and the Collective Action members under the FLSA and NYLL, plus compensatory and liquidated damages in the amount of twenty five percent under NYLL §§190 et seq., §§650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, and interest;

i)      An award of unpaid overtime wages due under FLSA and New York Labor Law;

j)      An award of unpaid "spread of hours" premium due under the New York Labor Law;

k)      An award of damages for Defendants' failure to provide wage notice at the time of hiring as required under the New York Labor Law.

l)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages, minimum wages and overtime compensation pursuant to 29 U.S.C. §216;

m)      An award of liquidated and/ or punitive damages as a result of Defendants' willful deduction of Plaintiffs' tips, failure to pay wages, minimum wages, overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

n)      An award of compensatory damages and punitive damages to be determined, damages as a result of pain and suffering, as a result of Defendants' willful violation of TVPRA;

o)      An award of compensatory damages to be determined for Defendants' breach of contract;

p)      An award of compensatory damages to be determined for Defendants' fraudulent acts;

q)      An award of compensatory damages to be determined for Defendants' breach of implied covenant of good faith and fair dealing;

n)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

o)      The cost and disbursements of this action;

p)      An award of prejudgment and post-judgment fees;

q)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

r)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated:  Flushing, New York,         HANG & ASSOCIATES, PLLC.
       October 16, 2020

                                       */S QINYU FAN*

                                       Qinyu Fan, Esq.
                                       136-20 38th Ave., Suite 10G
                                       Flushing, New York 11354
                                       Tel: 718.353.8588
                                       qfan@hanglaw.com
                                       *Attorneys for Plaintiffs*

# EXHIBIT 1

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by TH NYC Restaurant LLC and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid overtime and minimum wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Hongjie Song
Full Legal Name (Print)

_Hongjie Song_
Signature

_2020. 8. 10_
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by TH NYC Restaurant LLC and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid overtime and minimum wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.


Bai Sun
Full Legal Name (Print)

*Bai Sun*
Signature

2020/8/10
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by TH NYC Restaurant LLC d/b/a Pinch Chinese and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid overtime and minimum wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_____
Full Legal Name (Print)

_____
Signature

_____
Date

# EXHIBIT 2

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO:    Xiang Tang a/k/a Sean Tang

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Hong Jie Song, Bai Sun, and Jing Guo and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of  TH NYC Restaurant 1 LLC d/b/a Pinch Chinese for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


Dated: October 16, 2020

# EXHIBIT 3

### DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW

TO:   TH NYC Restaurant 1 LLC d/b/a Pinch Chinese
      177 Prince Street, Storefront
      New York, New York, 10012

PLEASE TAKE NOTICE, that Hong Jie Song, Bai Sun, and Jing Guo and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: October 16, 2020